# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 12-CR-4 CJW-MAR |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| KURT ALEXANDER, | |
| Defendant. | |

_____

This matter is before the Court on defendant Kurt Alexander's motion for compassionate release based on the ongoing COVID-19 pandemic. (Doc. 178). For the following reasons, defendant's motion is **denied.**

## I.    BACKGROUND

On September 27, 2012, the Court sentenced defendant to 324 months' incarceration, with ten years of supervised release to follow, on one count of conspiracy to distribute methamphetamine within 1,000 feet of a protected area and three counts of distribution of methamphetamine within 1,000 feet of a protected area. (Doc. 121, at 1–4).  On March 11, 2015, the Court reduced defendant's sentence to 262 months imprisonment as a result of a change to the sentencing guidelines. (Doc. 167).  On July 24, 2020, defendant filed his motion for compassionate release. (Doc. 178).  On July 29, 2020, defendant filed a supplement to his motion with additional information based on additional medical records the Bureau of Prisons ("BOP") provided to defendant's counsel. (Doc. 182).  On August 21, 2020, the government filed its response (Doc. 184) and on August 28, 2020, defendant filed a reply (Doc. 185).  Defendant is currently incarcerated at the Federal Correctional Institute ("FCI") Butner Low in Butner, North

Carolina (Doc. 184-1, at 4) with a projected release date of December 31, 2030. *Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/.

## II. COMPASSIONATE RELEASE

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Defendant here is 65 years old and thus, only subsection (i) applies. The starting point in determining what constitutes "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) is the United States Sentencing Guidelines ("USSG") section on

compassionate release. *See* USSG §1B1.13; *see also United States v. Rivernider*, No. 3:10-cr-222(RNC), 2019 WL 3816671, at *1–2 (D. Conn. Aug. 14, 2019). The policy statement contained in USSG Section 1B1.13 states that extraordinary and compelling reasons exist under several circumstances, including when the defendant is: (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physical or mental deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, is experiencing serious deterioration because of age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; or (5) some other extraordinary and compelling reason as determined by the Director of the Bureau of Prisons ("BOP").

Courts are split on whether the policy statement is binding because it predates the First Step Act of 2018's changes to Section 3582(c)(1)(A). *Compare United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019), *with United States v. Urkevich*, 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019). This Court has found that USSG Section 1B1.13, although a helpful guidepost, does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See United States v. Burnside*, No. 6:18-CR-2068-CJW-MAR, 2020 WL 3443944, at *3–4 (N.D. Iowa June 18, 2020) (compiling cases).

Thus, in order to qualify for compassionate release a defendant 1) must fully exhaust administrative remedies, 2) must demonstrate to the court that "extraordinary and compelling reasons warrant such a reduction", and 3) must otherwise warrant a

3

Case 1:12-cr-00004-CJW-MAR   Document 186   Filed 10/16/20   Page 3 of 11

reduction in sentence considering the factors set forth in Section 3553(a), to the extent they are applicable.

### A.     *Exhaustion of Administrative Remedies*

Title 18, United States Code, Section 3582(c)(1)(A) states that a court may consider reducing a term of imprisonment after the defendant exhausts all administrative remedies within the BOP or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" This Court has found that defendants are not required to administratively appeal a warden's denial and may instead fulfill Section 3582(c)(1)(A)'s exhaustion requirement by waiting 30 days from the date the warden receives their request before filing a motion in the courts. *See Burnside*, 2020 WL 3443944, at \*4–7.

On April 12, 2020, defendant sent a request for compassionate release to the prison's warden. (Doc. 184-1, at 10). On April 17, 2020, the warden received the request. (*Id.*). On April 23, 2020, the warden denied the request. (*Id.*). The government does not contest that defendant has exhausted his administrative remedies. (*Id.*). Thus, the Court finds that defendant has fulfilled the exhaustion requirement of Section 3582(c)(1)(A).

### B.     *Extraordinary and Compelling Reason*

Defendant argues that he has an extraordinary and compelling reason for release because his medical conditions put him at a high risk of severe complications and death if exposed to COVID-19. (Doc. 178-1, at 9–13). In support of his argument, defendant cites his age and his medical history of hypertension, peripheral artery disease, prior treatment for cancer, and hyperlipidemia. (*Id.*, at 11–13; Doc. 182, at 1–2). Defendant also states that he has severe headaches and ankle pain that developed as a result of two accidents that occurred before his incarceration. (Doc. 178-1, at 8–9). The government

4

argues defendant's health conditions are well-controlled and that defendant has failed to show he is unable to care for himself in the FCI. (Doc. 184-1, at 20).

The presence of COVID-19 at a defendant's specific facility or within the BOP generally can constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to age or underlying health conditions. *See Burnside*, 2020 WL 3443944, at *7 (compiling cases); *see also People at Increased Risk*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

At 65 years old, defendant's age puts him at an elevated risk from COVID-19 infection. *See Older Adults*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. According to the Centers for Disease Control ("CDC"), risk for severe illness from COVID-19 increases with age. *Id*. Generally, people in their 60s and 70s are at a higher risk for severe illness than people in their 40s and 50s. *Id*. People aged 85 and older have the greatest risk for severe illness from COVID-19. *Id.* Here, defendant is 65 years old which places him at a higher risk for severe illness, but not in the category of individuals with the greatest risk of severe illness resulting from COVID-19.

None of defendant's remaining heath conditions definitively put him at a higher risk for severe illness from COVID-19. First, defendant's history of cancer may place him at a higher risk for severe illness from COVID-19. People with Certain Medical Conditions: Cancer, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#cancer.

Having cancer increases the risk for severe illness from COVID-19, but it is not known whether having a history of cancer also increases the risk. Id. Here, defendant completed his cancer treatment in 2019 and any side effects are well managed. (Doc. 184-1, at 17). Second, defendant's health issues involving his cardiovascular and

5

Case 1:12-cr-00004-CJW-MAR   Document 186   Filed 10/16/20   Page 5 of 11

vascular health—including hypertension,[1] hyperlipidemia,[2] and peripheral artery disease[3]—may also place defendant at a higher risk for severe illness from COVID-19, although the evidence is not conclusive. *See, e.g.*, *Clinical Questions About COVID-19: Questions and Answers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last updated Aug. 4, 2020) (explaining the risks for individuals with hypertension). Individuals with these health issues are not listed as being high risk, but there may be some correlation between people with severe COVID-19 and these issues. Last, the Court is unaware of any evidence that places individuals with headaches and localized pain in a high-risk category for severe illness from COVID-19.

Defendant's age places him in a category of people that are at heightened risk from complications of COVID-19 infection. Defendant's other conditions place him in a category of people who may experience severe illness from COVID-19 but are not in the highest risk category. Thus, the Court finds that defendant suffers from the sort of "serious physical or medical condition" contemplated by USSG §1B1.13. This alone, however, does not constitute an extraordinary and compelling circumstance warranting compassionate release. Defendant must also show his conditions diminish his ability to

---

[1] Hypertension, more commonly called high blood pressure, can cause heart disease. *High Blood Pressure*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410 (last visited Oct. 1, 2020).

[2] Hyperlipidemia is a form of high cholesterol that affects cardiovascular health. *Prevention and Treatment of High Cholesterol (Hyperlipidemia)*, AM. HEART ASS'N, https://www.heart.org/en/health-topics/cholesterol/prevention-and-treatment-of-high-cholesterol-hyperlipidemia (last visited Oct. 1, 2020).

[3] "Peripheral artery disease is a narrowing of the peripheral arteries serving the legs, stomach, arms and head." *About Peripheral Artery Disease (PAD)*, AM. HEART ASS'N, https://www.heart.org/en/health-topics/peripheral-artery-disease/about-peripheral-artery-disease-pad (last visited Oct. 1, 2020).

6

provide self-care at the facility. *See* USSG §1B1.13. Here, neither of defendant's conditions "substantially diminishes the ability of the defendant to provide self-care within the" prison. *Id.* Further, defendant's conditions are well-controlled by medical care available at the prison. Indeed, defendant's classification as Care Level 2 indicates his medical conditions are well managed. Additionally, with only one inmate currently infected at defendant's facility, defendant's risk of exposure to COVID-19 is relatively low. *Bureau of Prisons, COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/. This is a close case, but the Court finds that defendant's medical conditions—even when combined with the potential for COVID-19 infection—do not constitute an extraordinary and compelling reason justifying release.

### C. *Section 3553(a) Factors*

Because defendant failed to show the existence of an extraordinary and compelling reason justifying his release, the Court's analysis could end here. Due to the closeness of this case, however, a thorough analysis of the remaining issues is warranted.

Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Also, Section 3582(c)(1)(A) requires a court to consider the factors set forth in Title 18, United States Code, Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims. 18 U.S.C. § 3553(a)(1)–(7).

Defendant's underlying offense is serious. Defendant was sentenced to 262 months' imprisonment after being found guilty of conspiracy to distribute methamphetamine within 1,000 feet of a protected area and three counts of distribution of methamphetamine within 1,000 feet of a protected area. (Docs. 121 & 167). The acts leading to his arrest involved more than 500 grams of methamphetamine mixture or pure methamphetamine. (Doc. 121, at 1). Defendant was also the organizer or leader of the conspiracy and possessed firearms. (Doc. 109, at 10–11). Indeed, distributing drugs into the community, and particularly near a protected area (here a playground), is dangerous and harms the community.

Defendant has a moderate criminal history. When defendant was 22 years old, he was convicted of breaking and entering. (Doc. 109, at 11). When defendant was 26 and again when he was 27, he was convicted of operating while intoxicated. (*Id.*). Defendant's prison sentence for each of those offenses was suspended. (*Id.*). Defendant did not have any other convictions until he turned 50 years old, when he was convicted of disorderly conduct. (*Id.*, at 12). The disorderly conduct was defendant's most serious prior conviction and arose after he struck his wife in her face with food. (*Id.*). Defendant was served with a no contact order, which he violated on several occasions. (*Id.*). As a result of the conviction, defendant served seven days in jail. (*Id.*). Defendant's remaining convictions were for speeding, harassment based on a violation of a protective order, and theft. (*Id.*, at 12–13). Defendant's prior convictions, particularly the convictions related to violating no contact and protective orders, show his disregard for the law and an inability to adhere to restrictions put in place by a court.

The Court acknowledges the work defendant has done to better himself while in prison. Defendant has completed a substance abuse program and furthered his education and creative pursuits, including discovering an interest in ceramics. (Doc. 178-1, at 14). Defendant has also not had any major conduct violations while in prison. (*Id.*). The

Court believes defendant has made a sincere effort to rehabilitate himself and he should be commended for his efforts. The amount of time defendant has served, however, does not reflect the seriousness of his crime. One of defendant's crimes of conviction carried a statutorily mandated minimum sentence of ten years. (Doc. 109, at 19). By establishing a mandatory minimum, Congress expressed its own estimation of the seriousness of defendant's conduct. Eight years ago, this Court sentenced defendant to 27 years—later reduced to approximately 22 years—in prison. This sentence was at the low end of the sentence guideline. (Doc. 122, at 1). Not only has defendant served less than 40% of that sentence, he falls short of the mandatory minimum sentence required by law. Nothing in the instant motion indicates that justice would be served by releasing defendant now. Indeed, releasing defendant now would undercut the will of Congress, signal that the crime is not as serious as the statute and guidelines reflect, and that older defendants would receive lesser punishments for similar crimes.

### III. HOME CONFINEMENT

The Court will also consider defendant's request for release to home confinement. District courts do not have the power to release an inmate to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. *See* Pub. L. No. 116-136, § 12003(b)(2) (2020). The Second Chance Act of 2007 ("SCA") was amended and reauthorized in 2018 by the First Step Act ("FSA"). Under the SCA, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The SCA directs the BOP, to the extent practicable, to "place prisoners with lower risk levels and lower needs on home confinement for the maximum of time permitted." *Id.* The CARES Act provides that if the Attorney General finds that the COVID-19 pandemic will materially affect the functioning of the BOP, then the director of the BOP "may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in

9

home confinement." Pub. L. No. 116-136, § 12003(b)(2). The Attorney General has made such a finding.[4] Accordingly, under the SCA and the CARES Act, the Attorney General, and by delegation the BOP, has the discretion and exclusive authority to designate the placement of an inmate's confinement, including an extended period of home confinement due to the COVID-19 pandemic. *See United States v. Chevchuc,* No. 16-CR-2056 LTS, Doc. 50 (N.D. Iowa April 15, 2020) (discussing the standards related to the SCA and the CARES Act).

At most, a court may recommend to the BOP that an inmate be placed on home confinement. *See* 18 U.S.C. § 3621(b) and *United States v. Gocha*, 07-CR-2006 LTS, Doc. 204 (N.D. Iowa Mar. 26, 2019) (recommending defendant be placed in a residential reentry center for the maximum time allowed); *see also United States v. Doshi*, 13-CR-20349, 2020 WL 1527186, at *2 (E.D. Mich. Mar. 31, 2020) (granting defendant's motion for judicial recommendation for home confinement); *United States v. Knox*, No. 15 Cr. 445 (PAE), 2020 WL 1487272, at *2 (S.D.N.Y. Mar. 27, 2020) (same). The Court declines to do so here. Defendant's request for a recommendation pursuant to the CARES Act is denied for the same reasons articulated above.

---

[4] The Attorney General made this finding on April 3, 2020. *See* William Barr, *Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

## IV. CONCLUSION

For the reasons set out above, defendant's motion for compassionate release (Doc. 178) is **denied.** Defendant must serve the remainder of his term of incarceration as previously directed. (Doc. 167).

**IT IS SO ORDERED** this 16th day of October, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa